2020 IL App (1st) 191456-U

No. 1-19-1456

Order filed May 20, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ANDREW M. STEPHENS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY; | ) | No. 19 L 50138 |
| THE DIRECTOR OF EMPLOYMENT SECURITY; THE | ) | |
| BOARD OF REVIEW; THE CITY OF CHICAGO c/o | ) | |
| SEDGWICK BRUCE KIJEWSKI, | ) | Honorable |
| | ) | Michael Francis Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Illinois Department of Employment Security Board of Review's determination that plaintiff was not eligible for unemployment benefits was not clearly erroneous where his employer presented evidence that plaintiff was discharged for misconduct because of misappropriation of funds.

¶ 2    Plaintiff Andrew M. Stephens appeals *pro se* from the judgment of the circuit court affirming the decision of the Illinois Department of Employment Security Board of Review ("the

Board") finding him ineligible for unemployment benefits because he was discharged for misconduct under the Unemployment Insurance Act ("Act") (820 ILCS 405/602(A) (West 2018)). On appeal, he argues that the Board's decision is "erroneous as a matter of law." We affirm the Board's decision.

¶ 3 Plaintiff was employed by the City of Chicago ("Chicago"), from June 1, 2012, until August 14, 2018. Plaintiff applied for unemployment benefits, and Chicago, through a third-party administrator, Sedgwick, protested. Chicago claimed: "[t]he [plaintiff] was terminated from City of Chicago for misappropriation of funds or property. It was discovered that there was a shortage in contributions collected due to the [plaintiff's] improper handling of client contribution money."

¶ 4 Transcripts of the proceedings and the prior adjudication summary show plaintiff was a hospitality worker for Chicago. In performing his job, he was to collect money from senior citizens that entered the diner for lunch. Each day plaintiff was responsible for preparing paperwork that verified what was collected and leaving the money secured in a lock box on the property. Then, on Friday or Monday, plaintiff was required to convert the money collected for the week into a money order. He would then give the money order, along with the prepared paperwork, to his supervisor.

¶ 5 A claims adjudicator for the Department of Employment Security interviewed plaintiff. Plaintiff stated that his job site serves senior citizens, and every week he procures a money order that he gives to his supervisor. He claimed that he did not take any funds and did not know what happened, or that the money was short to begin with. He thought he may have been pickpocketed. Plaintiff was aware of company policy from the employee handbook against stealing. He was not aware he could be discharged for not complying with the policy.

¶ 6     The claims adjudicator was unable to contact Sedgwick and left a message instead. The adjudicator determined that plaintiff was ineligible for unemployment benefits because he was discharged for misappropriation of funds where "the employer discovered a shortage in contributions collected due to the claimant's improper handling of client contribution funds" and for dishonesty where the plaintiff provided conflicting explanations for the missing funds. The claims adjudicator also noted that plaintiff violated a known and reasonable company rule. Plaintiff's request for reconsideration was denied.

¶ 7     Plaintiff appealed the adjudicator's decision, and a telephone hearing was held. Medrick Miller and Juanita Clark appeared as witnesses for Chicago, and plaintiff appeared as well.

¶ 8     At the telephone hearing, Miller, a Supervisor of Personnel Administration for the Department of Family and Sports Services, in the Labor Relations Division, stated that he discharged plaintiff for misappropriation of funds because plaintiff did not turn in the collected money in the appropriate fashion for the week of July 23, 2018. When plaintiff was informed that his services would no longer be needed, he apologized and explained that he believed he had been robbed.

¶ 9     Clark, Assistant Community Living Specialist with the City Services Administration Department and plaintiff's immediate supervisor, testified that when she went to pick up paperwork from plaintiff in the last week of July, he informed her that the paperwork was not ready because "the monies were missing." Plaintiff told her he believed he was pickpocketed and $100 was missing. Plaintiff asked if Clark could come back later for the report. Clark stated when a report is submitted it is accompanied by money in the form of a check. She explained that, when plaintiff submitted the report two days later, there was $100 placed back in and there were no

missing funds. The following week, the paperwork did not match and there was a missing difference of $129. Plaintiff told Clark he took the $129 "to make up for the previous week of missing money." Clark stated a difference between the report and cash totals might be a "dollar or 2 if you don't keep up with the things that come in, but a difference of $100 or $129, that's underheard of." Plaintiff did not file a police report, or provide an answer to where he may have been pickpocketed.

¶ 10    Plaintiff testified that he was employed by Chicago as a hospitality worker. He could not "account for what happened with the $100." He believed he was pickpocketed but did not know how or by who. He never contacted police about the lost money. Plaintiff denied using the $129 to make up for the missing $100. He was uncertain how he ended up short two weeks in a row. He did not count the money for the second week.

¶ 11    The referee issued a decision, finding plaintiff "collected $100 of the employer's monies and failed to turn it in or report the funds to the police as missing" and Chicago was harmed by the lost revenue. The referee noted the misappropriation of company funds was a deliberate and willful violation of Chicago's rules and polices inherent in governing an employee's behavior. The referee concluded that plaintiff's actions amounted to misconduct that disqualified him from receiving unemployment benefits.

¶ 12    Plaintiff appealed the referee's decision to the Board. In his notice of appeal, plaintiff claimed that he collected meal contributions daily and converted the funds in a money order at the end of the week. He contested the sufficiency of the evidence establishing that he engaged in misconduct because Clark did not charge him with "misconduct on the day she picked up the weekly funds to take to the currency exchange." In the notice of appeal, plaintiff checked a box

stating he sent this information by certified mail to Chicago but did not provide his signature or date.

¶ 13    On February 13, 2019, the Board affirmed the decision of the referee. In doing so, the Board noted that plaintiff's written argument was not certified in writing to have been mailed or served on the employer as required by Section 2720.315 of Title 56 so it was not considered by the Board. 56 Ill. Adm. Code 2720.315 (2019).

¶ 14    On March 11, 2019, plaintiff filed a complaint for administrative review. On July 9, 2019, the circuit court affirmed the decision of the Board. Plaintiff timely appealed.

¶ 15    We initially note that plaintiff's brief fails to comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), which requires an appellant's arguments to be supported with citations to pertinent legal authority and portions of the record. Here, plaintiff has failed to provide relevant citations to the record or pertinent legal authority in violation of Rule 341(h). Plaintiff's only citation to legal authority is to 42 U.S.C. § 1983. However, this statute is not relevant to the case appealed as plaintiff did not file a complaint pursuant to 42 U.S.C. § 1983 in the circuit court.

¶ 16    Defendant's *pro se* status does not relieve him of the responsibility to comply with the appellate procedures established by our supreme court. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. "This court 'is not a depository in which an appellant may dump its arguments without factual foundation in hopes that we will sift through the entire record to find support for a determination favorable to appellant's position.' " *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 51-52 (2005) (quoting *Coffey v. Hancock*, 122 Ill. App. 3d 442, 444 (1984)). "Accordingly, since plaintiff's brief fails to comply with the requirements of Rule 341, we may, in our discretion, dismiss his appeal." *Zale v. Moraine Valley Community College*, 2019 IL App

(1st) 190197, ¶ 32. However, since we have the benefit of a cogent brief from the opposing party, we will address plaintiff's argument. See *Stolfo v. KinderCare Learning Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 19.

¶ 17    Plaintiff contends on appeal that the Board's decision was erroneous as a matter of law because it was not supported by substantial evidence. He argues there was a "heinous *** conspiracy against him that included false allegations of misconduct and termination of employment from the City of Chicago." Additionally, he argues the circuit court erred in "excluding" a certified mail receipt.

¶ 18    Decisions of the Board are reviewable under the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2018)). 820 ILCS 405/1100 (West 2018). The applied standard of review depends on whether the question presented is one of fact or law. *Pesoli v. Department of Employment Security*, 2012 IL App (1st) 111835, ¶ 20. "In reviewing the Board's findings of fact, we deem those findings *prima facie* true and correct and will reverse only if they are against the manifest weight of the evidence." *Id.* When we are dealing with the Board's findings on a question of law, the review is *de novo*. *Id.* Finally, when the Board's decision involves a mixed question of law and fact it will be reviewed under the "clearly erroneous" standard. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 21. A decision by the Board "is clearly erroneous if, based on the entire record, the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)). We review the final decision of the Board, however where "the Board incorporated the referee's decision in its entirety as part of its decision

and made no additional findings" it is appropriate to review the findings of fact and conclusions of law by the referee under the clearly erroneous standard. *Petrovic*, 2016 IL 118562, ¶ 22.

¶ 19    In the case at bar, the Board incorporated the referee's decision and affirmed the denial of benefits, and therefore we will apply the clearly erroneous standard. *Id.* The referee found that plaintiff was ineligible for unemployment benefits because he was discharged for misconduct where he collected $100 and failed to turn it in or report the funds missing to Chicago.

¶ 20    "Misconduct is defined as (1) a deliberate and willful violation of (2) a reasonable rule or policy (3) that harms the employer or other employees or has been repeated by the former employee despite a warning or the employer's explicit instructions." *Baker v. Illinois Dept. of Employment Sec.*, 2014 IL App (1st) 123669, ¶ 15. There is a willful violation of workplace rules when an employee is aware of and consciously disregards that rule. *Id.* The Board's decision may be affirmed on any basis found in the record. *Id.*

¶ 21    After reviewing the record, we find the Board's decision that plaintiff was discharged for misconduct under section 602(A) of the Act because he misappropriated funds was not clearly erroneous. The record shows that plaintiff did not turn in the collected money for the weeks of July 23, and July 30, 2018, in the appropriate fashion. Clark, plaintiff's immediate supervisor, testified that when she went to pick up the required paperwork from plaintiff in the last week of July, he informed her that the paperwork was not ready because the money was missing. Plaintiff told Clark that he believed he had been pickpocketed and $100 was missing. Two days later, plaintiff submitted the paperwork along with the money. However, at the end of the following week, there was $129 missing. Plaintiff told Clark that he took the $129 "to make up for the previous week of missing money." Plaintiff acknowledged that he was aware of policies against the

misappropriation of funds. Given this record, we cannot say that we are left with a "definite and firm conviction" that the Board committed a mistake in its decision affirming the referee's judgment that plaintiff was discharged for misconduct as a result of misappropriating of funds. *Petrovic*, 2016 IL 118562, ¶ 21.

¶ 22    In reaching this conclusion, we need not consider plaintiff's argument in his brief that there was a dispute over whether he placed the money in his apron pocket, or whether the supervisor left the money in her car. We will not consider these allegations because they were not presented to the Board and there is no evidence of them in the record. 735 ILCS 5/3-110 (West 2018) (No new evidence shall be heard by the court reviewing the decision of the administrative agency). We briefly note that during the administrative proceedings, plaintiff stated he did not know what happened to the missing $100 and that he may have been pickpocketed. However, plaintiff acknowledged that he never contacted the police about the lost money or alleged robbery.

¶ 23    Separately, plaintiff argues there was error by the circuit court for refusing to admit a certified mail receipt.

¶ 24    Under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)) our responsibility as an appellate court is to review the agency's decisions, not the circuit court's decisions. *Metro Developers, LLC v. City of Chicago Dept. of Revenue*, 377 Ill. App. 3d 395, 397 (2007). "We review an administrative agency's decision regarding the admission of evidence for an abuse of discretion." *Danigeles v. Illinois Dept. of Financial and Professional Regulation*, 2015 IL App (1st) 142622, ¶ 82. Judicial review is limited to the administrative record, and consequently we will not hear new or additional evidence in support of, or in opposition to, the decision of the

administrative agency. 735 ILCS 5/3-110; *Marconi v. Chicago Heights Police Pension Bd.*, 225 Ill. 2d 497, 532 (2006).

¶ 25    Here, the record shows that plaintiff included a written argument in his notice of appeal to the Board. In the notice, he filled out information including his name and the address of the opposing party but did not provide signature or other proof certifying in writing that his written argument was served on Chicago. Section 2720.315 of Title 56 states the Board shall not consider any written argument unless the party has certified that it served a copy of the written argument on the opposing party. 56 Ill. Adm. Code 2720.315 (2019). Here, plaintiff did not certify that a copy was served on defendant. Consequently, the Board's decision not to consider plaintiff's argument was not an abuse of discretion.

¶ 26    For the reasons stated we affirm the judgment of the circuit court of Cook County affirming the judgment of the Board.

¶ 27    Affirmed.