2023 IL App (1st) 220889-U

FOURTH DIVISION
Order filed: March 2, 2023

No. 1-22-0889

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| ANTHONY FEENEY, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | |
| CIVIL SERVICE BOARD OF THE METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, and JOHN KENDELL, MAZIE HARRIS, DONALD STORINO, in their capacities as members of said Civil Service Board, and THE METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, a Municipal corporation, and DAVID ST. PIERRE, in his capacity as Executive Director thereof,<br><br>Defendants-Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 17 CH 13307<br><br><br><br><br><br>Honorable<br>David B. Atkins,<br>Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1 *Held*: Administrative agency's decision suspending an employee for seeking to obtain an unauthorized discount on his personal purchases is affirmed where the agency's findings of fact are sufficient, the evidence supports one of the grounds for the suspension, the employee has failed to establish that he has conclusive newly discovered evidence warranting further proceedings, and an error in the length of the suspension has been rendered moot.

¶ 2 Following proceedings on remand from this court's prior decision in *Feeney v. Civil Service Board of Metropolitan Water Reclamation District of Greater Chicago*, 2020 IL App (1st) 190928, Anthony Feeney appeals the decision of the circuit court affirming the decision of the Civil Service Board ("Board") suspending Feeney from his employment with the Water Reclamation District of Greater Chicago ("District"). Feeney raises numerous issues with the form and substance of the Board's decision, but we find no issues warranting reversal and likewise affirm the Board's decision.

¶ 3 As we recounted in our previous opinion, Feeney is a pipefitter leadman for the District in its Stickney plant. In December 2016, the District began investigating Feeney's alleged use of an unauthorized discount on his personal purchases from Southtown Paint and Wallpaper ("Southtown") in Orland Park, Illinois, in October and November 2016. Two months later, on February 2, 2017, the District suspended Feeney without pay for 30 days pending discharge in connection with its investigation. The District subsequently filed charges against Feeney before the Board alleging that Feeney identified himself as a District employee to Southtown employees in order to receive the District discount on his personal paint purchases and to avoid paying sales tax. The District brought two charges against Feeney: (1) violation of Administrative Procedure 10.27.0, Rules for Employee Conduct, section (3), intolerable offenses, paragraph (e), which prohibits employees from "engaging in fraud, deceit, or intentionally providing false information

or making misrepresentations *** in the use or attempted use of various government-mandated or District-provided benefits"; and (2) violation of rule 11.041, paragraph (9) of the Personnel Rules for the Classified Service of the Metropolitan Water Reclamation District of Greater Chicago, which provides that an employee may be discharged if he found to be guilty of "any conduct which tends to render the employee's continued employment detrimental to the discipline, efficiency, or reputation of the District." By law, Feeney's suspension was extended until the Board's decision was rendered. See 70 ILCS 2605/4.14 (West 2016).

¶ 4 The Board held a hearing on the charges in May and June 2017. At the hearing, several employees from Southtown testified, beginning with Matthew Maciasz, who rang up Feeney's purchase on October 18, 2016. Matthew Maciasz testified that Feeney came into the store that morning and purchased a gallon and two quarts of paint as well as some paintbrushes. Matthew Maciasz testified that he charged Feeney's purchase to the District's account because "that's what Feeney said it was for, that's the account to use." Feeney also gave Matthew Maciasz a purchase order number. Matthew Maciasz testified that Feeney left without paying. On cross-examination, Matthew Maciasz admitted that he did not ask Feeney for a badge or confirm that the purchase order number was connected to the District.

¶ 5 Matthew Offord, another Southtown employee, testified that he served Feeney on November 2. After preparing Feeney's paint, he asked Feeney if he had an account. Feeney replied that he was with the District and gave a purchase order number. While the sales receipt for the purchase indicates that the paint was sold to the District, Feeney paid for it on his own. On crossexamination, Offord explained that Southtown sold items to the District at a discount, and the District was not required to pay sales tax on its purchases. While Southtown also had discounts for individual

painters who paid cash, the discount was not as great as the District's discount and individual painters were also responsible for paying sales tax.

¶ 6 Casey Maciasz served Feeney at Southtown on November 3. Feeney gave Casey his items and told Casey he was employed at the District. Despite this, Casey rang Feeney up as an individual painter and gave him the lesser cash discount. Feeney then paid and left the store.

¶ 7 Mary Ornoff, Southtown's office manager, also testified. According to Mary, when Feeney's October 18 purchase was made and charged to the District, an e-mail was automatically sent to the District. After receiving the e-mail, Kathryn Skrzypek, an account clerk for the District who also testified, noted that the purchase order number was incorrect and called Mary to tell her that it was not a District-authorized purchase and the District would not pay for it. Skrzypek testified that the same thing happened with Feeney's November 2 purchase, in that she received an e-mail notifying her of the charge. When Skrzypek called Mary again, Mary pulled up the credit card charge and discovered that Feeney made the purchase.

¶ 8 When Feeney returned to Southtown on the afternoon of November 3, a Southtown employee informed Mary that Feeney was there, and Mary came out of her office to talk to him. She asked Feeney to pay the $104.96 outstanding invoice of October 18 that the District had refused to pay. Feeney initially maintained that he had already paid but ultimately made the requested payment. The payment of $104.96 that Feeney made still included the District's discount and did not include sales tax, although by that point Mary knew that he was not entitled to those benefits.

¶ 9 In January 2017, Tom Bolland Jr., a "very good customer" of Southtown, left a voicemail for Casey. In his voicemail, Bolland said that Feeney had mistakenly charged his purchases to the District, but he should have charged it to the Bolland account because Bolland was working on a painting project for Feeney. Casey told Mary about the voicemail, and Mary called Bolland's

brother, Mike, with whom she had a better relationship. From that call, she got the impression that the Bollands wanted Southtown to say they made a mistake in giving Feeney the District discount, which Mary refused to do.

¶ 10 Robert Byrne, a senior human resources analyst for the District, also testified on the District's behalf. Byrne interviewed Feeney in connection with the District's investigation. During that interview, Feeney maintained that he did not ask Southtown to charge the District for his purchases but only mentioned that he knew Mark Flynn, a painter for the District who also patronized Southtown. Feeney claimed that Matthew Maciasz "assumed" he worked for the District.

¶ 11 Byrne also testified that Feeney had previously been suspended pending discharge in January 2015. That suspension was the result of a failure to perform his supervisory duties by allowing District employees to have access to a room at the Stickney plant to watch television and sleep during work hours. Feeney and the District entered into a settlement agreement under which Feeney admitted wrongdoing in exchange for a shorter suspension. Feeney also agreed to comply with the District's rules and regulations and to "refrain from engaging in any conduct that is grounds for discipline and discharge."

¶ 12 After the District rested, Feeney called several painters for the District to testify on his behalf, beginning with Flynn. Flynn testified that he works in the Stickney plant with Feeney but in the paint shop. The District had a contract to buy paint from Southtown in 2014 and 2015 but not 2016.

¶ 13 Howard Meter and Ricardo Gilmore, painters for the District who worked in Calumet, also testified. Meter testified that he never went to Southtown to purchase paint for the District but only for personal projects. However, he and Gilmore went to Southtown in the spring of 2016 to obtain

quotes for materials they needed for the District. Meter and Feeney bore some resemblance to each other.

¶ 14 Finally, Feeney testified on his own behalf. He testified that he had been a pipefitter leadman for the District at the Stickney plant for 23 years. He had also been going to Southtown for 25 years but did not know that the District had an account at Southtown. On October 16, he was having painting done on his house and the painters sent him for supplies. He went to Southtown, where Casey served him. Casey asked Feeney what he did, and Feeney told him that he worked for the District. Casey knew Flynn, and he and Feeney chatted about a mutual acquaintance. Matthew Maciasz may have been present for this conversation. Feeney testified that he paid for his purchase and left.

¶ 15 Feeney returned to Southtown two days later, on October 18. At that time, he never mentioned the District or the discount to Matthew Maciasz, who served him. He testified that he only gave a purchase order number after Matthew Maciasz asked for it, and the reason he gives a purchase order number is to keep his house expenses separate from his heating and airconditioning side business expenses.

¶ 16 Following the testimony, the Board took the matter under advisement before issuing a written ruling on August 9, 2017. In its ruling, the Board noted that the credibility of the Southtown employees and Feeney were "significant" to the outcome, but the Board but did not explicitly make credibility findings, instead stating that the credibility of "multiple witnesses" was "inconclusive." It defined the issue as whether Feeney was deceitful in "attempting to secure favorable pricing or discounts as a result of his District employment." Because the discounts Feeney obtained were less than $100—$36, to be exact—the Board held that discharge was "excessive," despite the fact that "any deceit by its employees damages the reputation of the District." Ultimately, the Board

concluded that Feeney should be suspended for six months following the initial 30-day suspension, for a total of seven months ending on September 9, 2017.

¶ 17 After the Board denied his petition for rehearing, Feeney filed a complaint for administrative review in the circuit court of Cook County on October 3, 2017. Following briefing, on June 6, 2018, the circuit court affirmed the Board's decision but held that the additional onemonth suspension following the Board's decision was void and remanded the matter back to the Board.

¶ 18 On remand, the parties stipulated that the only issue for resolution was the amount of back pay owed to Feeney given that the circuit court found that Feeney's suspension should have ended on August 9, 2017. On January 16, 2019, the Board awarded Feeney $6822.29 in back pay (excluding Feeney's vacation from August 9 through August 22), though Feeney sought $10,022.07 (pay for the full month).

¶ 19 The Board denied Feeney's petition for rehearing, and Feeney again sought review in the circuit court. On April 24, 2019, the circuit court found that Feeney was entitled to $10,022.07 in back pay and stated that its order was final and appealable as it resolved all issues between the parties. On appeal from that decision, this court held that the Board's decision lacked sufficiently specific findings of fact to allow for adequate appellate review. Therefore, this court vacated the judgment of the circuit court and remanded for the Board to provide more-detailed findings of fact supporting its decision. See *Feeney*, 2020 IL App (1st) 190928, ¶¶ 33–39.

¶ 20 On remand, the Board rendered a new Remanded Decision, containing the following findings and conclusions:

> "At the [Board] hearing on May 17, 2017, the District provided testimony that Mr. Anthony Feeney ("Feeney") came into Southtown Paint and Wallpaper ("Southtown") on

October 18, 2016 for the purpose of purchasing paint. He was waited on by Mr. Matthew Maciasz ("Maciasz"). Maciasz's testimony was that Feeney was purchasing paint for District purposes and provided a District purchase order number. Maciasz's testimony was clear and unequivocal. It was clear to the [Board] that Feeney was attempting to purchase paint on the District's account when in fact the purchase was for his own personal use. This is fraudulent behavior by Feeney.

On November 2, 2016, Mr. Matthew Offord ("Offord") was working at Southtown, and he waited on Feeney who was again purchasing paint. Feeney indicated to Offord that he was employed by the District. Feeney provided Offord the District's purchase order number. Feeney validated the purchase order with his signature but paid for the paint with his personal credit card. Again, Feeney was deceitful in the purchase of the paint by utilizing the District's purchase order number trying to induce Offord to provide a discount and avoid sales tax. As in Maciasz's testimony, Offord's testimony was unambiguous and straightforward. The [Board] found it compelling and persuasive.

On November 3, 2016, Feeney again visited Southtown to purchase paint. While at Southtown, Feeney engaged with Mary Offord1 ("Mary"). Mary asked Feeney to pay for the paint purchased on October 18 as the District refused to pay. Mary testified that Feeney said he had already paid for it, and a disagreement ensued. Feeney ultimately paid for the items purchased on October 18, 2016. Mary's testimony was likewise credible.

Other witnesses testified on behalf of the District, and Feeney testified in his own behalf along with other witnesses. Unlike the testimony of Maciasz, Offord, and Mary, the other witnesses' testimony was inconclusive.

The credible testimony of Maciasz, Offord, and Mary exhibit deceitful behavior by Feeney. By Feeney providing deceitful and intentionally false information, he is in clear violation of Administrative Procedure 10.27.0, Rules for Employee Conduct, Section 3, Intolerable Offenses paragraph e. Feeney is also in violation of Personnel Rule 11.041, as he brings disrepute to the reputation of the District.

Wherefore, based on the testimony set forth above, [the Board] finds that a sixmonth suspension is warranted."

¶ 21 After the Board denied his petition for rehearing, Feeney sought review of the Board's decision in the circuit court, challenging (1) the Board's authority to suspend him beyond the date of the Board's original decision, (2) the sufficiency of the Board's findings of fact, (3) the sufficiency of the evidence of deceit, (4) the sufficiency of the evidence of a violation of District rules, (5) the rationale supporting the length of the suspension, and (6) the need to introduce new post-hearing evidence. The court heard oral argument from the parties, during which the District informed the court that it had already paid Feeney one month's worth of back pay, thereby correcting any potential issue regarding the suspension extending beyond the date of the Board's original decision. The District also affirmed to the court that it had no intention of recouping that back pay or pursuing that issue any further.

¶ 22 The circuit court ultimately rendered a judgment affirming the Board's remanded decision, concluding that the suspension did not exceed the statutory limit; that the new evidence that Feeney sought to introduce would be cumulative to the evidence already introduced; and that the Board's new, more-detailed findings were not against the manifest weight of the evidence. This appeal follows.

¶ 23 In this appeal, Feeney argues that the Board's findings remain inadequate, that the evidence was insufficient to demonstrate a violation of District rules or to support the length of the suspension imposed, that new post-hearing evidence regarding his claim of mistaken identity warrants remand for further proceedings, and that the six-month suspension imposed by the Board is effectively a seven-month suspension that the Board lacks statutory authority to impose. Although two of these arguments have some merit, none warrant reversal.

¶ 24 We note at the outset that, with the exception of the circuit court's decision to not remand the cause back to the Board to hear Feeney's newly discovered evidence (see *Baker v. Illinois Department of Employment Security*, 2014 IL App (1st) 123669, ¶ 23), our task in this appeal is to review the Board's decision, not that of the circuit court. See *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 28. The Board's "findings and conclusions on questions of fact are held to be *prima facie* true and correct." *Id.* (citing *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 15). When we review the Board's findings of fact we do not reweigh the evidence or substitute our judgment for that of the Board. See *id.* Rather, we determine whether the findings are against the manifest weight of the evidence, meaning that the "opposite conclusion is clearly evident." *Id.* (citing *Windsor Clothing Store v. Castro*, 2015 IL App (1st) 142999, ¶ 26).

¶ 25 Feeney's first argument concerns the form of the Board's order on remand. In the prior appeal before this court, we vacated the circuit court's decision affirming the Board's ruling and remanded for the Board to produce additional findings of facts supporting its conclusions. See *Feeney*, 2020 IL App (1st) 190928, ¶ 39. Although the Board did indeed provide additional findings in its decision on remand, Feeney contends that they remain inadequate. However, we are satisfied that the shortcomings of the Board's initial decision are no longer present.

¶ 26 Specifically, we noted in our previous opinion that, although the Board "found that the credibility of the witnesses was the cornerstone of its decision, it made no credibility findings." *Id.* ¶ 33. To correct this issue, in its order on remand the Board added that Matthew Maciasz's testimony was "clear and unequivocal," that Matthew Offord's testimony was "compelling and persuasive," and that Mary Offord's testimony was "likewise credible." The Board further characterized the testimony of these three Southtown employees collectively as "credible." Thus, the lack of findings regarding credibility have been sufficiently remedied.

¶ 27 We also noted in our previous decision that the Board's "reference to Feeney's deceit [was] likewise oblique," and that it was not clear which particular aspect of Feeney's conduct amounted to deceitful or fraudulent behavior. *Id.* As with its findings regarding credibility, the Board sufficiently augmented its findings on this issue in its decision on remand, explaining that "Feeney was attempting to purchase paint on the District's account when in fact the purchase was for his own personal use. This is fraudulent behavior by Feeney." The Board also stated that "Feeney was deceitful in the purchase of the paint by utilizing the District's purchase order number trying to induce Offord to provide a discount and avoid sales tax." Accordingly, we are satisfied that ambiguity that previously prevented adequate appellate review is no longer present.

¶ 28 Moving to the merits of the Board's ruling, Feeney next contends that the evidence was insufficient to demonstrate a violation of District rules or to support the length of the suspension imposed. This presents a mixed question of law and fact because it asks "whether an undisputed rule of law as applied to established facts is or is not violated." *Engle*, 2018 IL App (1st) 162602, ¶ 31 (citing *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 16). Such a decision is reversible if clearly erroneous, meaning that "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.*

¶ 29 The District brought two charges of misconduct against Feeney. The first alleged a violation of Administrative Procedure 10.27.0, Rules for Employee Conduct, section (3), intolerable offenses, paragraph (e), which prohibits employees from "engaging in fraud, deceit, or intentionally providing false information or making misrepresentations *** in the use or attempted use of various government-mandated or District-provided benefits." Feeney makes several arguments related to this charge and the evidence supporting the Board's finding of guilt, one of which does indeed have some merit.

¶ 30 Feeney contends that the fraud and deceit that the Board found that Feeney committed was not the type of fraud and deceit that is prohibited by paragraph (e), and he appears to be correct. Paragraph (e) expressly prohibits fraudulent or deceitful conduct in the use or attempted use of "government-mandated or District-provided benefits." And neither the District nor the Board has provided any explanation as to how a discount offered by a private business to the District for District purchases qualifies as a "government-mandated or District-provided benefit[]." To the contrary, the evidence shows that discount at issue is a benefit that Southtown provides of its own accord to the District. Based on the rule's plain language, Feeney's fraudulent conduct in attempting to utilize Southtown's District discount for his personal use simply does not fall under the ambit of paragraph (e). The Board's conclusion that it did was clear error. However, while there does not appear to be evidentiary support for this ground, the Board found another ground for discipline that appears to have sufficient support.

¶ 31 The District's second charge against Feeney alleged a violation of rule 11.041, paragraph (9) of the Personnel Rules for the Classified Service of the Metropolitan Water Reclamation District of Greater Chicago, which provides that an employee may be disciplined if he is found to be guilty of "any conduct which tends to render the employee's continued employment detrimental

to the discipline, efficiency, or reputation of the District." Unlike rule 10.27.0(3)(e), rule 11.041(9) is not restricted to specific conduct and instead broadly applies to "any conduct" that renders Feeney's continued employment detrimental to the reputation of the District. Feeney argues that there was no testimony presented specifically addressing the reputation of the District and how his conduct is detrimental to that reputation, but we do not believe that such testimony was required. There was testimony detailing Feeney's actions and misrepresentations regarding the nature of his purchases, and the effect of his conduct is self-evident. It is not necessary to have a witness explicitly say that it reflects poorly on the District for a longtime employee and supervisor to misrepresent to a District vendor that he is making a purchase for the District in order to obtain a discount on a personal purchase. That fact speaks for itself. *Cf. Board of Education of Sparta Community Unit School District No. 140 v. Illinois State Board of Education*, 217 Ill. App. 3d 720, 728 (1991) (noting that the harmful effect of the defendant's actions was "self-evident," even in the absence of testimony on that issue). Accordingly, although one of the Board's two grounds for suspension appears to have been unsupported by the record, there was no error regarding its finding on the second.

¶ 32 Feeney also makes two other arguments regarding the Board's choice of punishment. First, he asserts that rule 11.041(9) explicitly only allows for the "discharge" of an employee for committing the prohibited acts discussed therein, without any mention of suspension for such conduct. Therefore, Feeney contends that he cannot be suspended for violating that rule. However, it seems illogical to say that the rule's authorization of the imposition of a more severe penalty does not allow for the imposition of a lesser sanction. Surely, a reasonable interpretation of rule 11.041(9) must allow for discharge as well as any lesser punishments. *Cf. Board of Education of City of Chicago v. Moore*, 2021 IL 125785, ¶ 33 (holding that at the conclusion of discharge

proceedings the Board of Education had the discretion to impose a suspension, a lesser form of discipline, when the evidence did not establish cause for the greater sanction of discharge).

¶ 33  Second, Feeney argues that the Board's decision to impose a six-month suspension for his actions in obtaining what amounted to a $35 discount was arbitrary and capricious. See *Edwards v. Illinois Racing Board*, 187 Ill. App. 3d 287, 293 (1989) ("[A] reviewing court may overturn sanctions imposed by an agency which are overly harsh in view of mitigating circumstances. *** [T]he test is whether, in view of the circumstances, the agency acted unreasonably or arbitrarily."). However, given that this is not Feeney's first violation of District rules, that the conduct at issue was not an isolated incident but rather three separate acts of misconduct, and that the Board could have imposed an even harsher penalty (termination) under rule 11.041(9), the six-month suspension was not arbitrary or unreasonable.

¶ 34 Feeney next argues that he has new post-hearing evidence regarding his claim of mistaken identity that warrants remand for further proceedings. Specifically, he alleges that, as he recounts in his own unsworn "affidavit," Howard Meter told him that on October 3, 2017, the employees of Southtown confronted Meter in a manner that suggested that they had confused Meter for Feeney. Feeney contends that testimony on this event would support his claim of mistaken identity.

¶ 35 Section 3-111(a)(7) of the Code of Civil Procedure (735 ILCS 5/3–111(a)(7) (West 2020)) allows the circuit court to remand a decision back to an administrative agency for additional testimony. "The question of whether to remand a case to the administrative tribunal for the purpose of presenting new evidence is a matter of sound discretion of the circuit court." *Baker v. Illinois Department of Employment Security*, 2014 IL App (1st) 123669, ¶ 23 (citing *Morelli v. Ward,* 315 Ill. App. 3d 492, 499 (2000)). We see no abuse of discretion in this case.

¶ 36 First, Feeney's purported "affidavit" is not an affidavit at all, as it is unsworn. See *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493–94 (2002) (" 'A writing which does not appear to have been sworn to before any officer does not constitute an affidavit.' " (quoting *People v. Smith*, 22 Ill. App. 3d 377, 380 (1974))). Second, Feeney's allegations are nothing but hearsay and are, therefore, far less reliable. Third, all three Southtown employees identified Feeney as the person who was attempting to use the District account for his personal purchases, and Feeney's "affidavit" lacks sufficient detail regarding their alleged actions toward Meter to substantially undermine those identifications. For each of those reasons, the circuit court did not abuse its discretion in refusing to remand the cause back to the Board for further testimony.

¶ 37 Lastly, Feeney asserts that, as it did in its original order, the Board in its order on remand again imposed what effectively amounts to a seven-month suspension that it was not authorized to impose. Feeney appears to be correct on this point. Feeney was initially suspended for 30 days pending the initiation of discharge proceedings. At the conclusion of those proceedings, the Board in its initial decision imposed a six-month suspension. On appeal, the circuit court concluded that a six-month suspension, when added to the initial 30-day suspension, would have extended beyond the date of the Board's decision, which would have exceeded the Board's statutory authorization to suspend an employee until the date of its decision. See 70 ILCS 2605/4.14 (West 2016) ("Nothing in this Act shall limit the power of any officer to suspend a subordinate for a reasonable period not exceeding thirty days; however, if charges are filed against a suspended employee, the suspension shall be extended *until the civil service board enters its finding and decision* regarding the charges ***" (emphasis added)). Accordingly, the circuit court ordered the Board to reduce the length of the suspension so that it did not extend beyond the date of the Board's decision, and the Board granted Feeney back pay for the voided period of the suspension. Feeney then appealed that

decision back to the circuit court, which ordered the Board to award a larger amount of back pay, and the parties each then appealed to this court. We vacated the circuit court's and the Board's decisions and remanded for additional proceedings.

¶ 38 On remand, the Board imposed the exact same sanction that it had imposed the first time, a six-month suspension. When asked by counsel at a hearing on the matter whether this was the same suspension that it had imposed previously, with counsel noting the possible illegality of that suspension when added to the initial 30-day suspension, the Board clarified that its new decision on remand did not change anything from its initial order other than "further clarification as to why [the Board] found the way that it did." Thus, it appears that the Board has again imposed a sixmonth suspension that is to be added on to the initial 30-day suspension. As the circuit court observed earlier, such a suspension would extend beyond the date of the Board's original decision and would, therefore, be unauthorized. See *id.* However, when reviewing the Board's new decision on remand, the circuit court this time found no fault with the six-month suspension. This appears to be because, for reasons that are not clear from its order, the court this time did not factor in Feeney's initial 30-day suspension pending the initiation of discharge proceedings.

¶ 39 Feeney now contends that we must again reverse and remand for the suspension to be reduced so that it concludes on the date of the Board's original decision. The District, however, argues that the issue is moot because it has already paid Feeney for the voided period of the suspension that followed the Board's original decision and because the District does not intend to seek recoupment of that payment or to otherwise pursue this issue any further. We agree with the District that the issue is now moot.

¶ 40 "An issue is moot when its resolution could not have any practical effect on the existing controversy" (*LaSalle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 43 (1998)

(citing *Midwest Central Education Association, IEA–NEA v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 448 (1995))) or when "an actual controversy no longer exists between the parties and the interests and rights of the parties are no longer in controversy" (*Id.* (citing *Indlecoffer v. Village of Wadsworth*, 282 Ill. App. 3d 933, 938–39 (1996))). Although the suspension that the Board imposed appears to extend beyond the date of its original decision, the suspension has long since concluded, and the District has corrected the practical effect of the Board's error by paying Feeney the amount that he would have earned during the unauthorized portion of the suspension. Further, the District has affirmed on the record, both in the circuit court below and in its brief in this appeal, that it will not seek to recoup that back pay or otherwise pursue this matter any further; it is acknowledging and proceeding as though the suspension ended on the date of the Board's original decision. Accordingly, remand for correction of the length of the suspension would have no practical effect, as Feeney stands to gain nothing of substance, and no actual controversy exists. Thus, the issue is moot.

¶ 41 Seeing no errors in the Board's decision that warrant relief, we affirm the Board's order suspending Feeney for conduct that is detrimental to the reputation of the District.

¶ 42   Affirmed.